**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ISABEL TRANSITO MIRANDA,** | § | **C.A. NO. 4:19-cv-00092-ALM** |
| **CESAR BAUTISTA, and CESAR** | § | **JUDGE MAZZANT** |
| **ISLAS, Individually and On Behalf of All** | § | |
| **Others Similarly Situated,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| **MAHARD EGG FARM, INC., and** | § | |
| **MAHARD PULLET FARMS, INC.,** | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Defendants Mahard Egg Farm, Inc. ("Mahard Egg") and Mahard Pullet Farms, Inc. ("Mahard Pullet") (collectively referred to as "Defendants") file their Objection to Plaintiffs' Motion to Compel Discovery as follows:

**I.**
## PLAINTIFFS ISLAS AND BAUTISTA ADMITTED THERE IS NO BASIS FOR A CLASS ACTION

This case involves three former employees of Mahard Egg Farm who are bringing claims under 42 U.S.C. §1981, which is a post-civil war statute providing that persons within the jurisdiction of the United States shall have the same right to "make and enforce contracts…as is enjoyed by white citizens."  Unlike Title VII, which covers many different types of discrimination such as gender discrimination, sexual harassment, religious discrimination, etc., Section 1981 is very narrow.  Plaintiffs must show that they are being treated different than white employees and that should be the focus of discovery.

The opening paragraph of the Motion to Compel asserts that Hispanic workers were not provided with restrooms, potable water or hand-washing facilities.  Plaintiffs Islas and Bautista were deposed on August 22 and 23, 2019, and admitted that they had access to (and in fact used) the restrooms, break room, sinks and water cooler in the processing plant when they worked there.[1]  They admitted that other Hispanic employees did as well.  Both admitted that there were no "whites only" facilities.  They testified they saw white employees working on the farm over the years, but claimed they did not stay long because they did not like the work.  Plaintiff Islas appears to contend that it was because white workers were lazy.  The allegations in the Complaint and the Motion to Compel regarding these issues do not satisfy the requirements of Rule 11(b) of the Federal Rules of Civil Procedure and no discovery should be allowed on these alleged working conditions.

With respect to sexual harassment or assault, neither Bautista nor Islas could cite a single instance of any woman being subjected to sexual harassment and the class allegations in the Complaint are made in bad faith.  Amazingly, although they are co-plaintiffs with Miranda, they testified that she never mentioned being sexually assaulted while they worked together.  That is consistent with the fact that she never mentioned it to Defendant, her healthcare providers, or anyone else until months after her discharge and over a year after the alleged incident.  The class allegations of sexual harassment also do not satisfy the requirements of Rule 11(b), especially in light of the fact that the alleged harasser is Hispanic and 42 U.S.C. §1981 will not support a claim for sexual harassment.

With respect to many of the other salacious allegations in the Complaint and the Motion to Compel, Bautista testified about things that occurred in the 1990's.  He said nothing about

---

[1]  The transcripts are not yet available, but if there is any question regarding the testimony, Defendant requests leave to supplement this response with excerpts once they are available.

these things then and left the company voluntarily three times, each time asking to return to work at the farm.  Islas, Bautista and Miranda also referred numerous family members and friends to work at Mahard.  Plaintiff Miranda referred her children and grandchildren to work for Mahard. None of the discovery requested by Plaintiffs can overcome these damaging facts which are inconsistent with the allegation that Hispanic workers were being mistreated.

With respect to the alleged "dangerous gas levels" neither Bautista nor Islas could explain what that meant, other than to say that chicken manure smells very bad.  More importantly, they could not point to any white employee who was provided with respirators, boots, earplugs, gloves, or aprons.  In addition to admitting that white employees worked on the farm, they admit white farm owner Andy Mahard, and his daughter, Blair Mahard, work at the farm without any of this equipment. Bautista and Miranda also filed sworn declarations in the FLSA case - *Transito Isabel Miranda, et. al. v. Mahard Egg Farm, Inc. and Mahard Pullet Farms, Inc.* 4:15-cv-0406 – stating they knew "most, if not all, of the workers" who worked at the farm (which included white workers) and recalled  all of them "having to buy their own safety equipment."  (Dkt. 17 in the FLSA case).  They submitted this sworn declaration on behalf of employees or all races, including white employees.  Their depositions were the second time they have stated under oath that white employees are treated the same as Hispanic employees.

## II.
## ALLEGATIONS REGARDING THREATS OF DEPORTATION

Plaintiffs argue in the Motion to Compel that one reason broad discovery is warranted is because managers and supervisors would "threaten to have Hispanic workers deported if they complained about their working conditions."  The allegation of "undocumented workers" was also made multiple times in the FLSA case, including in declarations submitted to obtain conditional certification.  Bautista and Islas were asked about this allegation in their depositions,

but counsel instructed them not to answer any questions regarding immigration status.  Defense counsel tried multiple phrasings of the questions, even tying it to Plaintiffs providing information to the EEOC on the issue (which they admitted doing), but each time they were instructed not to answer.  Counsel could not cite any authority for his instruction to refuse to answer on these questions.  Defendants asked that Plaintiffs remove this allegation from the Complaint and discovery requests.  The request was refused, but Plaintiffs now claim in the Motion to Compel that this allegation supports their request to obtain information about hundreds of employees to further their claim that Mahard was employing undocumented workers who need this class action to protect their rights.  The Court should deny the motion to compel as a sanction for discovery abuse.

### III.
### INCONSISTENT ALLEGATIONS IN THE PRIOR FLSA CASE SHOW THAT THE ALLEGATIONS IN THE MOTION TO COMPEL ARE MADE IN BAD FAITH

Plaintiffs Miranda and Bautista filed the FLSA class action in this Court - *Transito Isabel Miranda, et. al. v. Mahard Egg Farm, Inc. and Mahard Pullet Farms, Inc.* 4:15-cv-0406.  In their Motion for Conditional Certification and in the Declarations filed, (Dkt. 17 in that case), they represented to the Court that all workers, not just Hispanic workers, were "not paid for all hours worked" and were required to purchase their own personal protective equipment.  The Court granted conditional certification, and Defendants provided a class list of over 200 current and former employees.  The notice, which was approved by the Court (Dkt. 27 in that case), stated that workers should join if they:

"Did not get overtime pay (1.5 times their regular hourly rate for hours over 40 in a workweek)"

"Were paid for fewer hours than they actually worked"

"Had to work without clocking in"

"Had to buy their own equipment (masks gloves, boots, etc.)"

Of the more than 500 notices that went out, only 77 individuals joined the case.  Looking at the ratio of Hispanic to White workers to whom notices (containing the allegations above) were sent and comparing it to the percentage that opted in, it is clear that a larger percentage of white employees joined than Hispanic employees.  In seeking approval of the settlement, counsel for Plaintiffs attached the Settlement Agreement which stated that those 77 plaintiffs "with full assistance and through consultation with counsel" were entering into the agreement, so counsel knew who they were and the fact that a large percentage were white.  This settlement was approved by the Court and the claims were dismissed with prejudice.  (Dkt. 62 in that case).

The Complaint in this case recycles some of the same allegations in the FLSA case.  For example, the Complaint and the Motion to Compel assert that Hispanic workers were the ones who did not get overtime pay, were paid for fewer hours worked, and had to buy their own masks, gloves, boots, etc.  Having had substantial discovery in the FLSA case, representing to the Court that white workers were subjected to these conditions, meeting white workers who they claimed to represent, and seeing the racial makeup of the opt ins, and then recycling allegations claiming it was only Hispanic workers who were mistreated presents a clear case of bad faith.  Further, the claims founded on alleged mistreatment of workers in the manner described in the Class Notice were released in a settlement approved by this Court.  The Court should deny class wide discovery of personnel files, pay records, and employee contact information as a sanction for this bad faith pleading.

Finally, with respect to the allegation in the Motion to Compel that discovering the identities of potential class members is essential, Plaintiffs submitted in the FLSA case sworn declarations stating that they knew "most if not all" of the workers at the farm.  They went on to

claim that "I believe that there are many current and former employees for Mahard who would join" but that they just needed their addresses and phone numbers to send notice.   Those declarations were signed four years ago and since that time Plaintiffs were given 556 names to use to develop their class claims.   They have failed to do so and no additional discovery should be allowed, especially in light of the inconsistent positions taken in this Court.

### IV.
### THERE IS A LESS BURDENSOME ALTERNATIVE
### TO DEVELOP EVIDENCE FOR CLASS ALLEGATIONS

The Motion to Compel states that one category of information at issue is "information related to class members and other witnesses."   It is clear from the depositions of Bautista and Islas that counsel has spent very little time talking to their own clients.   Not only did Bautista and Islas admit that the allegations in the Complaint and the Motion to Compel were not true, they were also asked about their interrogatory answers.   None of the Plaintiffs have signed verifications for their interrogatory answers.   Defendants learned why in the depositions – Bautista and Islas testified that many of the answers were not correct or that they could not verify the information in the answers.   Bautista further testified that he cannot read or speak English and did not understand what was in the answers served by counsel.   Counsel for Defendants asked counsel for Plaintiff on the record to commit to a date to provide verifications, but counsel for Plaintiff refused to commit to a date.   The interrogatories were served on May 17, 2019.

In addition to the 556 names and contact information provided in the FLSA case, Counsel for Plaintiffs also has access to a long list of family members and friends of Bautista, Islas, and Miranda who worked for Mahard.   They did not want to disclose the list, but the Court ordered them to do so in the telephone hearing on August 6, 2019.   Although it is unclear whether counsel as spoken to any of them, Bautista and Islas admit that none of their family members or

friends who worked for Mahard have expressed an interest in joining this case.  None of the information requested in the Motion to Compel can change that.  Given the long list of people counsel for Plaintiff has had access to for many years, (556 from the FLSA class list, 77 claimed to be represented in the motion to approve the FLSA settlement, and numerous friends and family members of the Plaintiffs), it is inexplicable why counsel for Plaintiff needs more information from Defendants.

**V.**
**SPECIFIC REQUESTS AT ISSUE**

The body of Plaintiff's Motion to Compel misrepresents the status of Defendants' disclosures.  The information that has been provided is as follows:

**A.  "Class Member and Witness Identities"**

**Plaintiff's Interrogatory No. 1:** Identify all individuals who were employed in a non-managerial position by Mahard Egg Farm, Inc., or Mahard Pullet Farm, Inc., at Mahard's Chillicothe, TX, facility at any time from February 4, 2015, to the present.

In May of 2016, Plaintiffs' counsel was provided with a list of 556 current and former employees in the FLSA case in this Court - *Transito Isabel Miranda, et. al. v. Mahard Egg Farm, Inc. and Mahard Pullet Farms, Inc.* 4:15-cv-0406.  Plaintiffs have produced this list back to Defendants in this case, but it has more names – so the list is up to 572. When asked for the names of individuals who make up the class in this case, they refer to this list.  When the 77 individuals opted in to join the FLSA case, additional information was produced.  From these 77 individuals to whom counsel represented to the Court they were "providing full assistance and consultation" in the motion to approve settlement, Plaintiffs' counsel should be able to identify who has claims and articulate the basis for the claims.  As for the 479 people on the class list

who chose not to join the FLSA case, counsel has had their contact information for over three years and should be in a position to make a decision as to whether they have claims.

Bautista and Miranda left the company in February of 2015, so the list provided in the FLSA case in May of 2016 has plenty of names covering the time period they worked for the company.  Islas left in March of 2017, but he admitted that he resigned for a better paying job and could not cite any instance of harassment in the days or weeks leading up to his resignation.  But to the extent Islas claims he needs an updated list, in a hotline call on August 6, 2019, the Court instructed Plaintiffs to identify relatives who worked for Mahard.  This was based on Defendants' argument that Plaintiffs referred numerous family members to work for Mahard, which as at odds with their contention that there is rampant discrimination and harassment.

Plaintiff Miranda identified five relatives, four of which are with her in Ohio now.  In fact, on another hotline call on August 26, counsel represented that Miranda could not travel to Texas for her depositions because she takes care of her grandkids, which are likely the children of her relatives who used to work for Mahard.  Despite counsel having access to these relatives who worked for Mahard, none of them have joined this case.

Plaintiff Islas disclosed the names of three relatives who worked for Mahard.  He admitted in his deposition that there were more relatives and friends who worked for Mahard.  None of them have joined this case, and in fact many of them have been approached by either Plaintiffs or their counsel and have no interest in joining. Several of Islas's relatives and friends, like Islas, left the company and returned several times, which is at odds with the notion that there was rampant discrimination and harassment.

Plaintiff Bautista disclosed that he had 19 relatives who worked for Mahard.  He also admitted being acquainted with many other current and former employees of Mahard.  Plaintiffs

offer no explanation in the Motion to Compel as to why they have not been able to gather evidence from them, especially as to alleged racial remarks.  If they cannot obtain declarations from the many contacts they already have that racial slurs were made, no additional class list will help them pursue a class claim.

> **Plaintiff's Interrogatory No. 2.**  Identify all individuals and entities who managed, supervised, and/or employed Plaintiffs and/or those individuals identified in response to Interrogatory No. 1.

Defendants answered.   The supervisors at issue at the Chillicothe location where Plaintiffs worked, for as far back as the statute of limitations will support, were Oscar San Miguel, Blair Mahard, and Tony Brown.  Plaintiffs' counsel also took at 30(b)(6) deposition on August 19, 2019, and obtained more information regarding historical management of the farm, dating back many years.  Plaintiffs Islas and Bautista also testified about historical management back to the 1990's.

> **Plaintiff's RFP 3.** The personnel files, performance metrics, reviews, discipline documents, or other documents relating to the evaluation of the job activity, productivity, or performance of those individuals whose identities are sought through Interrogatory No. 2.

There is no question that personnel files contain confidential information.  Plaintiffs agree because they raised this issue on the August 6, 2019, hotline call in their successful attempt to block Defendants from serving a subpoena on Overstreet Dairy.  Plaintiff Islas resigned from his employment at Mahard and went to work for Overstreet.  He later returned to work for Mahard.  Defendants argued that what he told Overstreet when applying for a job was clearly relevant to the issue of whether he claimed the working conditions at Mahard were intolerable. Further, the reasons for his leaving Overstreet and returning to work for Mahard are relevant because if the working conditions were bad during his first tenure, it makes no sense that he would leave a good job at Overstreet Dairy to return to work for Mahard. Plaintiffs offer no

explanation as to why someone who chooses to join a lawsuit (the Plaintiffs) can assert a privacy objection and claim sifting through their filse is just "fishing" while personnel files of farm owner Andy Mahard, his daughter, and another manager is not fishing.

> **Plaintiff's RFP 13 -** A list containing extracted data in electronic, delimited, and importable format, identifying the following information for each Plaintiff and person whose identity is sought through Interrogatory Nos. 1 and 2: first and last name, employee identification number(s), last-known personal address, personal email address, and personal phone number.

As set forth above, Defendants provided this information in the FLSA case after the Court ruled on the Motion for Conditional Certification. They have also likely been provided with an additional list by the EEOC during its investigation. Having been provided with two lists with contact information for hundreds of current and former employees in the last three years, Plaintiffs only have three people asserting claims in this case. A new list will not help Plaintiffs make a case for certifying a class because Plaintiffs Bautista and Islas admitted in their depositions that there are no "whites only" policies or practices to support a class action under 42 U.S.C. §1981.

> **Plaintiff's RFP 14:** A list containing extracted data in electronic, delimited, and importable format, providing the following information for each Plaintiff and person whose identity is sought through Interrogatory Nos. 1 and 2: first and last name, employee identification number(s), gender, race, ethnicity, national origin, dates of employment, job title, and job code.

The request appears to be the same as No. 13, except it is asking for gender, race, ethnicity, national origin, dates of employment, and job code. Defendants do not keep track of race, ethnicity or national origin so it would have to create a document that does not exist. Having represented 77 current and former employees (many of whom are white) in the FLSA case, Plaintiffs' counsel knows this information about them. Further, the declarations filed in the FLSA case state that Bautista, Miranda and four other former employees state that they "know

most if not all" of the workers.  If those declarations are true, counsel for Plaintiffs have access to six witnesses should know the race and gender of these workers and can take the list of 562 individuals and fill in the blanks.  Plaintiffs also know the information being requested about the many friends and relatives they referred to work for Mahard.  The lists provided in the FLSA case do not have gender, but 42 U.S.C. §1981 is not a gender discrimination statute.

### B.  "Work Environment"

**Plaintiff's RFP 1:** All communications, inter-office memoranda, meeting notes and/or minutes, presentations, recordings, or other documents, relating to Plaintiffs and/or those individuals whose identities are sought through Interrogatory No. 1 and any of the following topics: working conditions, workplace safety, hiring, firing, promotion, discipline, working hours, pay, discrimination, harassment, race/ethnicity, and/or work schedules.

Defendants responded that Plaintiffs did not have company email or a company phone and Defendants are not aware of any communications with them on any personal email or personal phone.  Defendants offered, by way of compromise, that if Plaintiffs would disclose their personal cell phone numbers and email addresses, Defendants would search for additional records, but Plaintiff Bautista and Plaintiff Islas confirmed in their depositions that there would be no such communications.

As for the specific topics listed, Defendants have searched for and produced all documents relevant to the three named Plaintiffs.  Defendants have repeatedly asked for the names of any other individuals who plan to join this case and, once they join, will produce documents relating to them.  No additional plaintiffs have come forward.  With over 500 names provided three years ago, one of two things is happening:  (1) There are no additional plaintiffs, as confirmed by Plaintiff Bautista and Islas in their depositions when asked who else had an interest in joining; or (2) Counsel is holding back names to avoid them being deposed, and instead asking Defendants to search for information regarding hundreds of employees while

hiding the ball on who might have a claim.  Either scenario, coupled with Bautista and Islas testifying in their depositions that they had no evidence of "whites only" rules to support a claim under 42 U.S.C. §1981, is a sufficient to deny the motion on this overly broad request.

In support of their argument to compel broad discovery related to working conditions at the farm, Plaintiffs cite to the *Brand v. Comcast* case out of the Northern District of Illinois.  In that case, the African-American plaintiffs alleged they were subjected to a hostile work environment based on race.  *See Brand v. Comcast Corp.*, 302 F.R.D. 201, 207-08 (N.D. Ill. 2014).  The plaintiffs sought class certification based on allegations that the facility where they and other African-American employees worked was dilapidated and that their equipment was broken, inferior, and infested compared to other facilities in suburban areas where predominately white employees worked that were in better condition, with better equipment.  *See Comcast*, 302 F.R.D. at 220. Unlike the *Comcast* case, where the plaintiffs compared their facility and equipment to the state of other facilities and equipment where predominately white employees worked, in this case, there is one facility with equipment that is used by all employees, regardless of race.  The *Comcast* case does not support Plaintiffs' motion to compel.

**Plaintiff's RFP's 4, 5 and 10:**

**RFP 4:**  All training, orientation, and/or new employee materials, including handbooks or meeting minutes, distributed or otherwise made available to Plaintiffs and/or those individuals whose identities are sought through Interrogatory No. 1 to the extent such materials relate to any of the following topics: working conditions, workplace safety, hiring, firing, promotion, discipline, working hours, pay, discrimination, harassment, race/ethnicity, and/or work schedules.

**RFP 5:** All documents used by Plaintiffs and/or those individuals whose identities are sought through Interrogatory No. 1 and/or 2 in the performance of their job duties including, but not limited to, any policies, procedures, rules, guidelines, handbooks, manuals, or plans to the extent such documents relate to any of the following topics: working conditions, workplace safety, hiring, firing, promotion, discipline, working hours, pay, discrimination, harassment, race/ethnicity, and/or work schedules.

**RFP 10:** All documents relating to Defendants' rules and policies, written or unwritten, regarding workplace health and safety that have been in effect at any time since February 4, 2015; any changes thereto; and the decision to make any such changes.

The Motion to Compel misrepresents that only documents relating to the three named Plaintiffs have been produced.  Policy documents in the Plaintiffs' personnel files have been produced, but the following additional documents relating to a broad base of employees have also been produced:

> Company Safety Policy – Mahard000211
> Insurance Disclosures and Forms – Mahard000188-202
> Employee Assistance Program – Mahard000186-187
> State and Federal Employment Laws Posters – Mahard000203-210
> Leave of Absence Policy - Leave policies – Mahard000790-791
> Employee Acknowledgement of Workers Compensation Network – Mahard 000792
> Training for Euthanasia and On-Farm Depopulation of Entire Flocks – Mahard000873
> Training for Catching and Transport – Mahard000874
> Code of Conduct for Poultry Caretakers – Mahard000875
> SQF Code Training Program Policy – Mahard000824
> SQF Code Incoming Goods – Mahard000825 (English) and Mahard000826 (Spanish)
> SQF Code Corrective Action Plan – Mahard000827 (English) and Mahard000828 (Spanish)
> SQF Code Isolation and Disposition – Mahard000829 (English) and Mahard000830 (Spanish)
> SQF Code Product Testing – Mahard 000831 (English) and Mahard 000832 (Spanish)
> SQF Code Process Monitoring – Mahard 000833 (English) and Mahard 000834 (Spanish)
> SQF Code Shipping Practices – Mahard 000835 (English) and Mahard 000836 (Spanish)
> SQF Code Glass Protocol – Mahard 000837 (English) and Mahard 000838 (Spanish)
> SQF Cod Process Area Waste Control – Mahard 000839 (English) and Mahard 000840 (Spanish)
> SQF Code Contact Packaging Traceability – Mahard 000841 (English) and Mahard 000842 (Spanish)
> SQF Code Corrugated Taping Procedure – Mahard 000843 (English) and Mahard 000844 (Spanish)
> SQF Code Foreign Material Prevention – Mahard 000845 (English) and Mahard 000846 (Spanish)
> SQF Dock Cleaning – Mahard 000847 (English) and Mahard 000848 (Spanish)
> SQF Code Processing Plan Personnel Practices – Mahard 000849 (English) and Mahard 000850 (Spanish)
> SQF Code Visitor Traffic Control – Mahard 000851 (English) and Mahard 000852 – Mahard 000853 (Spanish)

SQF Code Visitor Registration Program – Mahard 00854 (English) and Mahard 000855 (Spanish)
SQF Code Pest Control – Mahard 000856 (English) and Mahard 00857 (Spanish)
SQF Code Maintenance Program – Mahard 00858 (English) and Mahard 00859 (Spanish)
SQF Code Calibration Procedure – Mahard 000860 (English) and Mahard 000861 (Spanish)
SQF Code Verification (Internal Audit) – Mahard 000862 (English) and Mahard 000863 (Spanish)
SQF Code Sanitizers and Detergent Usage – Mahard 000864 (English) and Mahard 000865 (Spanish)
SQF Code SQF Operating Procedure – Mahard 000866 (English) and Mahard 000867 (Spanish)
SQF Code Stock Rotation – Mahard 000868 (English) and Mahard 000869 (Spanish)

**Plaintiff's RFP 12:** All documents relating to any formal or informal complaints, grievances, charges, allegations, audits, arbitrations, or lawsuits against or to Defendants relating to discrimination, harassment, environmental protection, smuggling aliens, and/or workplace health or safety within the past ten years.

With respect to discrimination and harassment, Defendants have produced all documents relating to complaints.  As to environmental protection and workplace safety, 42 U.S.C §1981 is not an environmental or workplace safety statute.  Further, Plaintiffs Bautista and Islas admitted that there were no special safety rules or jobs for "whites only."  They confirmed that white employees worked in the same work areas and working conditions as Hispanic employees. Bautista admitted that he worked for the company for over 20 years, leaving and coming back three times and the first time he raised these issues was in this lawsuit filed almost four years after he left the company. Plaintiff Islas testified that his only injury was a bruised toe requiring no medical treatment, but in any event, white employees worked with the same pallet jack Islas was using when he bruised his toe.  Defendant has produced documents relating to safety before taking Bautista and Islas depositions where they admitted there was no basis for a such a claim. As discussed above with respect to the *Comcast* case, there is no basis for broad discovery

regarding compliance with safety regulations because white and Hispanic employees worked in the same working conditions with the same equipment.

With respect to RFP 12's request for records regarding "smuggling aliens" Plaintiffs counsel instructed Bautista and Islas to refuse to answer any questions regarding immigration status.  Defendant proposes that if Plaintiffs want to proceed with this allegation, Bautista and Islas should be ordered to appear for depositions and answer the questions they refused to answer before any further discovery on this issue.

> **Plaintiffs RFP 17:** All documents relating to workplace injuries sustained by Plaintiffs and/or those individuals whose identities are sought through Interrogatory No. 1, including documents relating to claims for workers' compensation or other injury-related benefits..

Plaintiffs Bautista and Islas admitted in their depositions that there was no basis for a "whites only" injury policy or working conditions.  The only injury potentially connected to this case is Plaintiff Miranda's daughter (who Plaintiff Miranda recommended to come to work for Defendant).  She had a broken leg, but she received complete medical care and was returned to work.  Counsel for Defendant has repeatedly asked counsel for Plaintiff to disclose, from the 500 plus names provided three years ago, plus the numerous family members and friends of Plaintiffs, who else claims to have an injury and was denied treatment that would have been provided to white employees.  There has been no response.

Respectfully submitted,

*/s/ William L. Davis*
William L. Davis, Esq.
Lead Attorney
Texas Bar No. 05563800
william.davis@jacksonlewis.com
Julie A. Farmer, Esq.
Texas Bar No. 24059734
julie.farmer@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
PH:  (214) 520-2400
FX:  (214) 520-2008

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

   I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Eastern District of Texas on August 29, 2019, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

| | |
|---|---|
| Aaron Johnson | Anna P. Prakash |
| ajohnson@equaljusticecenter.org | aprakash@nka.com |
| Rebecca Eisenbrey | Robert L. Schug |
| reisenbrey@equaljusticecenter.org | schug@nka.com |
| Equal Justice Center and | Nicole J. Schladt |
| Transnational Worker Rights Clinic | nschladt@nka.com |
| 510 S. Congress Ave., Suite 206 | Nichols Kaster, PLLP |
| Austin, Texas  78704 | 80 S. 8th Street, 4600 IDS Center |
| | Minneapolis, Minnesota 55402 |
| Shana Khader | |
| skhader@equaljusticecenter.org | |
| Equal Justice Center and | |
| Transnational Worker Rights Clinic | |
| 1250 W. Mockingbird Lane, Ste. 455 | |
| Dallas, Texas  75247 | |

*/s/ William L. Davis*
William L. Davis, Esq.