IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TRANCITO ISABEL MIRANDA,<br>CESAR BAUTISTA, and CESAR<br>ISLAS, Individually and On Behalf of All<br>Others Similarly Situated,<br><br>    *Plaintiffs,*<br><br>v.<br><br>MAHARD EGG FARM, INC., and<br>MAHARD PULLET FARMS, INC.,<br><br>    *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **C.A. NO. 4:19-cv-00092-ALM**<br>**JUDGE MAZZANT** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.  Named Plaintiffs Trancito Isabel Miranda, Cesar Bautista, and Cesar Islas bring this action on behalf of themselves and putative classes of similarly situated current and former Hispanic employees (collectively, the "Hispanic Workers") against Defendants Mahard Egg Farm, Inc., and Mahard Pullet Farms, Inc., (collectively, "Mahard"). The Hispanic Workers were employed at Mahard's egg and pullet farm and processing plant in Chillicothe, Texas at various times since January 14, 2015. Mahard subjected the Hispanic Workers to an objectively hostile and abusive work environment on account of their Hispanic race, in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981). Mahard also subjected the Hispanic Workers to discrimination and retaliation on the basis of their race and/or national origin in violation of the Civil Rights Act of 1964 (Title VII). Further, Mahard subjected Named Plaintiff Trancito Isabel Miranda to discrimination and retaliation on the basis of her sex in violation of Title VII.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) for the claims brought under the Civil Rights Act of 1866 and the Civil Rights Act of 1964.

3.   Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

4.   Defendants have sufficient contacts with this forum to give this Court personal jurisdiction over each Defendant.

5.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

6.   Plaintiff Trancito Isabel Miranda is a Hispanic individual who was employed by Mahard from about February 2014 to about February 11, 2015.

7.   Plaintiff Cesar Bautista is a Hispanic individual who was employed by Mahard from about 1993, with some breaks in employment, until February 17, 2015.

8.   Plaintiff Cesar Islas is a Hispanic individual who was employed by Mahard from about 2012 to 2013, and again from about 2014 to about 2017.

9.   Plaintiff Trancito Isabel Miranda filed a charge of discrimination and an amended charge of discrimination with the EEOC, asserting individual and class claims against Defendants under Title VII and Texas law. Her charges were cross-filed with the Texas Workforce Commission Civil Rights Division. In addition, the Equal Justice Center filed a third-party charge of discrimination on behalf of the Hispanic Workers at Mahard.

10. Having exhausted their administrative remedies, Plaintiffs timely bring this action against Defendants.

11. Defendant Mahard Egg Farm, Inc., is a domestic for-profit corporation formed and existing under the laws of the State of Texas. Defendant Mahard Egg Farm, Inc., may be served with

process by serving its registered agent, Andy Mahard, at PO Box 248, Prosper, Texas, 75078, 410 E 1st Street, Prosper, Texas, 75078, or wherever he may be found.

12. Defendant Mahard Pullet Farm, Inc., is a domestic for-profit corporation formed and existing under the laws of the State of Texas. Defendant Mahard Egg Farm, Inc., may be served with process by serving its registered agent, Andy Mahard, at PO Box 248, Prosper, Texas, 75078, 410 E 1st Street, Prosper, Texas, 75078, or wherever he may be found.

## FACTS

13. Mahard manages both egg farms and egg processing plants. On its farms, Mahard raises pullets and laying hens and produces eggs. In its processing plants, Mahard's employees clean, sort, and package eggs. Mahard has operated facilities at various locations in Texas and Oklahoma, including a farm and adjacent processing plant in or near Chillicothe, Texas that Mahard has operated since about 1997.

14. Each of the Named Plaintiffs and Class Members (collectively "the Hispanic Workers") worked on Defendants' farm and adjacent processing plant in Chillicothe, Texas during the four years preceding the filing of this lawsuit. Named Plaintiffs Trancito Isabel Miranda and Cesar Bautista were primarily assigned to work in the hen and pullet houses on Mahard's Chillicothe farm, but were also regularly assigned to help work in Mahard's Chillicothe processing plant. Named Plaintiff Cesar Islas was primarily assigned to work in the hen and pullet houses on Mahard's Chillicothe farm between 2012 and 2013. Then, between 2014 and 2017, he was assigned to work in Mahard's Chillicothe processing plant.

15. Throughout their employment, the Hispanic Workers were subjected to a severe and/or pervasive hostile work environment and suffered discrimination in the terms, conditions, and privileges of their work based on their race and/or national origin.

16. The Hispanic Workers' work environment was permeated by intimidation and abuse. Mahard supervisory or management personnel—including Andy Mahard, Oscar San Miguel, and Tony Brown—regularly shouted at, cursed at, physically intimidated, and insulted the Hispanic Workers.

17. For example, on a daily or near daily basis, Mahard supervisory or management personnel hurled race- and/or national-origin-based insults at the Hispanic Workers such as "worthless Mexicans," "monkeys," "fucking Hondurans," "stupid Guatemalans," "dumbasses," "motherfuckers," "bastards," "wetbacks," and "illegals."[1] Supervisory or management personnel frequently told the Hispanic Workers that they should be grateful for their jobs, warned the Hispanic Workers that they could easily be replaced, and threatened to have the Hispanic Workers deported if they complained or did not obey orders. Meanwhile, the non-Hispanic workers employed by Defendants were treated with more respect.

18. Mahard supervisory and management personnel physically intimidated and threatened the Hispanic Workers by yelling in their faces, making menacing gestures, and throwing tools and objects at the workers. On occasion, supervisory and management personnel physically assaulted Hispanic Workers by violently shoving, grabbing, or hitting them.

19. Mahard supervisory and management personnel regularly yelled at Hispanic Workers found taking rest breaks, even on long shifts of 10 to 12 hours or longer, and even though non-Hispanic workers were not similarly scolded for taking rest breaks.

20. When Hispanic Workers were injured, Mahard withheld information about their right to file claims for workers' compensation benefits, and usually left them without compensation for wage replacement or to cover medical expenses.

---

[1] These insults were usually delivered in Spanish.

21. Supervisory and management personnel, including Oscar San Miguel, sexually harassed and assaulted some of the female Hispanic Workers, targeting them because of their race and/or national origin and because of their sex.

22. For example, supervisor Oscar San Miguel sexually harassed and assaulted Named Plaintiff Trancito Isabel Miranda at least twice during her time as a Mahard employee.

23. On or about March 25, 2014, supervisor Oscar San Miguel told Named Plaintiff Trancito Isabel Miranda not to come into work the following day. The next day, he came to her home, insisted on entering, and forcibly sexually assaulted her.

24. On or about August 22, 2014, supervisor Oscar San Miguel told Named Plaintiff Trancito Isabel Miranda that he was going to drive her from the processing plant to the farm. On the way to the farm, he stopped the car on the side of the road and sexually assaulted her a second time.

25. On or about February 9, 2015, supervisor Oscar San Miguel approached Named Plaintiff Trancito Isabel Miranda and told her that he had a list of workers that he planned to fire. When she asked him if she was on the list, he told her she was not. Then, he tried to touch her stomach and told her that he would drive her to work the next day. She told him that she would not go with him, and he got visibly angry.

26. Defendants then unlawfully discharged Named Plaintiff Trancito Isabel Miranda on or about February 11, 2015, in part because she refused to give in to Oscar San Miguel's sexual demands. Named Plaintiff Trancito Isabel Miranda filed her original complaint of discrimination against Defendants with the EEOC and the Texas Workforce Commission Civil Rights Division on June 9, 2015.

27. Supervisor Oscar San Miguel regularly falsified many of the Hispanic Workers' hours to deprive them of their earned wages, illegally bringing their effective hourly pay below the minimum wage required by law.

28. Defendants subjected the Hispanic Workers to unreasonably dangerous, unsanitary, and degrading conditions because of their race and/or national origin. Such conditions were neither necessary nor inherent in the nature of the work. Rather, Mahard created, perpetuated, and tolerated deplorably abusive conditions that violated basic legal and industry standards for health and safety because Mahard regarded the Hispanic workers as exploitable, expendable, and undeserving of better treatment. Indeed, Mahard intentionally hired Hispanic Workers disproportionately to non-Hispanic workers in order to exploit their workforce more easily. Mahard disproportionately assigned the Hispanic Workers at the Chillicothe facility to work on its farm, where conditions were distinctly more dangerous and unsanitary than in the processing plant.

29. Mahard refused to provide the Hispanic Workers with even the most basic safety and hygiene resources, personal protection equipment, or safety training that is necessary for the work and required by applicable regulations or industry standards.

30. For example, it is well known that workers in the agriculture industry frequently die by asphyxiation due to the concentration of toxic gases from accumulated manure in poorly ventilated farm structures. Nevertheless, Mahard refused to provide safety training, respirators, or gas monitors to protect the Hispanic Workers from dangerous levels of ammonia, hydrogen sulfide, methane, and carbon dioxide gases emitted by the massive manure piles in the hen and pullet houses.  The concentrated gases irritated and burned the Hispanic Workers' eyes, noses, throats, and lungs, and routinely caused nausea, dizziness, and vomiting—all signs that the gases exceeded maximum levels recommended for human health.

31. Mahard refused to provide boots for walking through manure and organic debris, and Hispanic Workers sometimes fell into wet manure waist-high or higher.

32. Mahard refused to provide protective masks to filter out the thick cloud of noxious organic dust composed of skin and feather particles, fecal matter, and related detritus.

33. Mahard refused to provide earplugs to protect from the high-decibel cacophony inside the packed hen houses.

34. Mahard refused to provide gloves or aprons to prevent cuts from chickens' beaks and claws, and to protect from disease-infested substances and toxic products such as rat poison.

35. If the Hispanic Workers wanted basic personal protection equipment, they had to purchase it themselves. Since they were paid only the minimum wage, any such purchases reduced their effective hourly rates to below the minimum wage required by law.

36. Mahard refused to provide bathrooms for most of the relevant period for the Hispanic Workers assigned to the hen and pullet houses, even though the workers regularly worked shifts of 10 to 12 hours and longer. As a result, male and female Hispanic Workers were daily required to relieve themselves in the open, in the manure pits, or not at all.

37. Mahard provided no potable water for the Hispanic Workers in the hen and pullet houses, in violation of basic safety standards, and even though Mahard was required by a 2011 Consent Decree to provide drinking water for its workers.

38. Hispanic Workers assigned to the hen and pullet houses were required to eat in the filthy farm environment, and were provided no hand-washing facilities or clean break area. If Hispanic Workers assigned to the hen and pullet houses attempted to eat indoors, Mahard supervisory or management personnel kicked them out.

39. Mahard's actions constitute a continuing violation that began at least as early as 1999 and continues to this day.

40. Mahard unlawfully discharged Named Plaintiffs Trancito Isabel Miranda and Cesar Bautista and other Class Members because they opposed or resisted Mahard's racially-motivated harassment.

## CLAIMS FOR RELIEF
## COUNT I: VIOLATION OF THE
## CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981
### *(On Behalf of the Named Plaintiffs and the Putative Class)*

41. Mahard imposed discriminatory job-related requirements and adverse terms and conditions of employment on the Named Plaintiffs and Class Members to which non-Hispanic employees were not similarly subjected.

42. Mahard's discriminatory and offensive treatment of the Named Plaintiffs and Class Members was sufficiently severe or pervasive that it created a hostile work environment in violation of 42 U.S.C. § 1981.

43. The Named Plaintiffs and Class Members reasonably perceived their work environment to be hostile, abusive, and discriminatory on the basis of their race and/or national origin.

44. Mahard's hostile, abusive, and discriminatory treatment of the Named Plaintiffs and Class Members was unwelcome.

45. Mahard unlawfully discharged Named Plaintiffs Trancito Isabel Miranda and Cesar Bautista because they opposed or resisted Mahard's racially-motivated harassment.

46. Defendants carried out their discriminatory practices intentionally, and with malice or reckless disregard for the Named Plaintiffs' and Class Members' statutorily protected rights.

47. As a result of Defendants' unlawful acts, the Named Plaintiffs and Class Members have suffered injury to their property and/or persons, including emotional distress, mental and emotional anguish, inconvenience, stress, humiliation, physical anxiety, and loss of enjoyment of life.

48. The Named Plaintiffs and Class Members seek all appropriate relief, including declaratory relief, injunctive and equitable relief, compensatory damages and punitive damages, attorney's fees, and costs of this action in an amount to be determined at trial.

**COUNT II: RACE AND NATIONAL ORIGIN DISCRIMINATION
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**
*(On Behalf of the Named Plaintiffs and the Putative Class)*

49. Title VII, in 42 U.S.C. § 2000e-2, provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…or national origin."

50. Defendants are employers within the meaning of Title VII.

51. Defendants discriminated against the Named Plaintiffs and Class Members with respect to the terms, conditions, and/or privileges of their employment because of or on the basis of their race and/or national origin, in violation of 42 U.S.C. § 2000e-2.

52. As a result of Defendants' violations of Title VII, the Named Plaintiffs and Class Members have suffered and will continue to suffer past, present, and future mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

53. The Named Plaintiffs and Class Members are entitled to attorneys' fees and costs incurred in connection with this claim.

54. The Named Plaintiffs and Class Members are also entitled to punitive damages because Defendants committed the above-alleged facts with reckless disregard and/or deliberate disregard

for the rights and safety of the Named Plaintiffs and Class Members.

## COUNT III: SEX DISCRIMINATION AND RETALIATION IN
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### *(On Behalf of Named Plaintiff Trancito Isabel Miranda)*

55. Title VII, in 42 U.S.C. § 2000e-2, also provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

56. Defendants are employers within the meaning of Title VII.

57. Defendants discriminated and retaliated against Named Plaintiff Trancito Isabel Miranda with respect to the terms, conditions, and/or privileges of her employment because of or on the basis of her sex, in violation of 42 U.S.C. § 2000e-2.

58. As a result of Defendants' violations of Title VII, Named Plaintiff Trancito Isabel Miranda has suffered and will continue to suffer mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

59. Plaintiff Trancito Isabel Miranda is entitled to attorneys' fees and costs incurred in connection with this claim.

60. Named Plaintiff Trancito Isabel Miranda is also entitled to punitive damages because Defendants committed the above-alleged facts with reckless disregard and/or deliberate disregard for the rights and safety of Named Plaintiff Trancito Isabel Miranda.

## CLASS ALLEGATIONS

61. Plaintiffs assert their claim under Section 1981 and their race and/or national origin discrimination claim under Title VII as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23(b)(1), (2), and (3).

62. Plaintiffs bring their claim on behalf of the Section 1981 Class, which, pending any modifications necessitated by discovery, is defined as follows:

### Section 1981 Class

All Hispanic individuals who were employed in a non-managerial position by Mahard Egg Farm, Inc., or Mahard Pullet Farm, Inc. at Mahard's Chillicothe facility at any time from February 4, 2015 until the present.

63. Plaintiffs bring their claim on behalf of the Title VII Class, which, pending any modifications necessitated by discovery, is defined as follows:

### Title VII Class

All Hispanic individuals who were employed in a non-managerial position by Mahard Egg Farm, Inc., or Mahard Pullet Farm, Inc. at Mahard's Chillicothe facility at any time from January 14, 2015 until the present.

64. The members of the putative classes are so numerous that joinder of all potential class members is impracticable. Defendants' payroll records indicate classes that potentially include over 600 individuals.

65. All of the Named Plaintiffs' and potential Class Members' claims arise from the same course of conduct by Mahard, set forth above, and the relief sought is common.

66. The Named Plaintiffs will fairly and adequately protect and represent the interests of the classes.

67. The Named Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in class and collective actions.

68. The prosecution of separate actions by the individual potential Class Members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants. For example, separate judgments could reach conflicting determinations of whether Mahard's conduct created an illegal hostile work environment, and

whether Mahard acted with malice or reckless disregard to the Named Plaintiffs' and Class Members' rights. Separate judgments could include varying forms of injunctive relief for members of the same workforce, resulting in a patchwork of individualized, individually enforceable safety standards.

69. Final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole because Mahard has created and refused to remedy a hostile work environment that affected the whole classes.

70. The questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Common questions include:

    a. What working conditions were Hispanic Workers subjected to at the Chillicothe farm and plant?

    b. Was Mahard's treatment of the Hispanic Workers—including the delivery by supervisors of regular insults, frequent physical intimidation and threats, and gratuitously dangerous and unsanitary working conditions—motivated by the workers' race and/or national origin?

    c. Was Mahard's treatment of the Hispanic Workers severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive?

71. The Named Plaintiffs are unaware of any members of the putative Classes who are interested in presenting their claims in a separate action.

72. The Named Plaintiffs are unaware of any pending litigation commenced by members of the Classes concerning the instant controversies.

73. This class action will be less difficult to manage than separate individual actions due to the uniformity of claims among the Class Members, the susceptibility of the claims to class litigation, and the use of representative testimony and representative documentary evidence.

74. The contours of the classes can be defined by reference to Mahard's records.

## JURY DEMAND

Plaintiffs demand trial by jury on all claims on which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a.  Declare Mahard in violation of the claims for relief set forth above;

b.  Certify and maintain this action as a class action, with the Named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

c.  Enjoin Mahard from engaging in such unlawful employment practices and order such affirmative action or equitable relief as the Court deems appropriate.

d.  Award damages to Plaintiffs and Class Members pursuant to 42 U.S.C. §1981, including compensatory and punitive damages;

e.  Award damages to Plaintiffs and Class Members pursuant to Title VII, including compensatory and punitive damages;

f.  Award Plaintiffs and Class Members the costs of this action;

g.  Award Plaintiffs and Class Members reasonable attorney's fees;

h.  Award Plaintiffs and Class Members pre-judgment and post-judgment interest; and

i.  Grant such other relief as this Court deems just and proper.

Respectfully submitted,

**EQUAL JUSTICE CENTER and
TRANSNATIONAL WORKER
RIGHTS CLINIC**
Aaron Johnson (TX 24056961)
Rebecca Eisenbrey (TX 24097646)
510 S. Congress Ave., Ste. 206
Austin, Texas 78704
Telephone: (512) 474-0007
Fax: (512) 474-0008
ajohnson@equaljusticecenter.org
reisenbrey@equaljusticecenter.org

Shana Khader (TX 24099860)
1250 W. Mockingbird Ln., Ste. 455
Dallas, Texas 75247
Telephone: (469) 228-4223
Fax: (469) 941-0861
skhader@equaljusticecenter.org

**NICHOLS KASTER, PLLP**
Anna Prakash* (MN 0351362)
Robert Schug* (MN 0387013)
Nicole Schladt* (MN 0400234)
80 South Eighth Street, Ste. 4600
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
aprakash@nka.com
schug@nka.com
nschladt@nka.com
*Admitted *pro hac vice*

*COUNSEL FOR PLAINTIFFS*