**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **TRANCITO ISABEL MIRANDA, CESAR BAUTISTA, and CESAR ISLAS, Individually and On Behalf of All Others Similarly Situated,** | § § § § § | |
| *Plaintiffs,* | § § | **C.A. NO. 4:19-cv-00092-ALM** |
| **v.** | § § | **JUDGE MAZZANT** |
| **MAHARD EGG FARM, INC., and MAHARD PULLET FARMS, INC.,** | § § § | |
| *Defendants.* | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT APPROVAL**

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Trancito Isabel Miranda, Cesar Bautista, and Cesar Islas ("Named Plaintiffs"), by and through their counsel, hereby respectfully move the Court for an Order granting Named Plaintiffs' Motion for Preliminary Settlement Approval and (1) certifying the Settlement Class for settlement purposes, (2) appointing Named Plaintiffs' counsel as Class Counsel, (3) appointing Named Plaintiffs as Class Representatives, (4) approving the Postcard Notice and Claim Form for distribution, and (5) scheduling a final approval hearing. Defendants Mahard Egg Farm, Inc., and Mahard Pullet Farms, Inc., ("Mahard" or "Defendants") do not oppose this Motion. For all of the reasons explained in Plaintiffs' accompanying Memorandum, the Court should grant the Motion and enter the Preliminary Approval Order that is attached as Exhibit D to the Parties' Settlement Agreement.

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Named Plaintiffs Trancito Isabel Miranda, Cesar Bautista, and Cesar Islas, individually and on behalf of the Settlement Class,[1] seek preliminary approval of a proposed settlement of the Named Plaintiffs' claims against Defendants for alleged violations of the Civil Rights Act of 1866 (42 U.S.C. § 1981) and the Civil Rights Act of 1964 (Title VII). The Settlement Agreement between Named Plaintiffs and Defendants (collectively, the "Parties"), if approved, will resolve all claims of the Named Plaintiffs and the members of the Settlement Class ("Settlement Class" or "Settlement Class Members") in exchange for substantial benefits.

The proposed Settlement of this action is the product of extensive arms-length negotiations by experienced and informed class action lawyers and warrants preliminary approval, as the terms are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Accordingly, the Named Plaintiffs request that the Court: (1) preliminarily approve the proposed Settlement, (2) certify the Settlement Class for settlement purposes only, (3) appoint Named Plaintiffs as Class Representatives, (4) appoint Named Plaintiffs' counsel as Class Counsel, (5) direct notice to be distributed to the Settlement Class, and (6) schedule a final approval hearing.

**BACKGROUND**

I.      **Procedural History.**

On June 9, 2015, Named Plaintiff Miranda filed her original complaint of discrimination against Defendants with the EEOC and the Texas Workforce Commission Civil Rights Division. (ECF No. 42 ¶ 26.) On February 4, 2019, Named Plaintiffs filed their class action complaint against

---

[1] Unless otherwise explicitly defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement, attached to the Declaration of Nicole J. Schladt ("Schladt Decl.") as Exhibit 1.

Defendants in the United States District Court for the Eastern District of Texas. (ECF No. 1.) On November 25, 2019, after receiving an EEOC probable cause finding and notice of their right to sue, the Named Plaintiffs filed a First Amended Complaint ("FAC"), adding Title VII claims on behalf of the Settlement Class and on behalf of Named Plaintiff Miranda. (ECF No. 42.) Defendant answered the FAC and moved to dismiss and/or strike the Title VII class allegations on December 9, 2019. (ECF Nos. 45, 44.)

The Parties engaged in formal discovery, with all Parties providing interrogatory and document request responses. (Schladt Decl. ¶ 4.) Additionally, the Parties undertook significant motion practice and discussions related to the Action. (*Id.*) The Parties collectively filed two motions to compel and the Named Plaintiffs filed a motion for a protective order. (ECF Nos. 16, 20, 43.) To date, Class Counsel has conducted a 30(b)(6) deposition and deposed Defendants' key managers, including Oscar San Miguel and Tony Brown. (Schladt Decl. ¶ 4.) Defendants have deposed the Named Plaintiffs and provided Class Counsel with the putative class members' names and contact information. (*Id.*) The Parties have obtained documents and gathered declarations from class members and other witnesses. (*Id.*) In particular, the Named Plaintiffs have produced declarations from Efrain Alarcon, Roxana Alarcon Chavez, Victor Corpus Casillas, Fabricio Reyna Ferrer, Noel Gonzalez, and Edgar Reyna. (*Id.*) Additionally, the Named Plaintiffs have drafted declarations from Claudia Madrigales, Sabino Ruiz, and Mark Gonzales. (*Id.*) And, Defendants produced hundreds of documents in response to Plaintiffs' discovery requests. (*Id.*)

The Parties agreed to attend mediation with third party neutral Gloria Portela on November 11, 2019. (*Id.* ¶ 3.) The Parties did not reach a settlement at mediation; however, the Parties were able to continue negotiations through Ms. Portela until December 30, 2019, on which date the Parties reached an agreement in principle to settle the claims of the Named Plaintiffs and

Settlement Class. (*Id.*) The Parties ultimately executed the final Settlement Agreement on March 2, 2020. (*Id.*)

## II.     Summary of the Named Plaintiffs' Settled Claims.

In this case, the Named Plaintiffs alleged that Defendants violated 42 U.S.C. § 1981 and Title VII by discriminating against Hispanic employees on the basis of their race and/or national origin. Specifically, the Named Plaintiffs alleged that Defendants targeted Hispanic employees, hurling racial slurs and physical objects at them, forcing them to endure life-threatening conditions without basic safety equipment, and threatening them with deportation and termination if they complained. (ECF No. 42 ¶¶ 17-18, 28-38.) Further, Named Plaintiff Miranda brought an individual claim for sexual assault and harassment under Title VII. (*Id.* ¶ 26.)

Defendants deny any liability for these claims, but to avoid the further costs and burdens of litigation, the Parties have agreed to settle. The proposed Settlement Class is defined as:

> *All Hispanic individuals who were employed in a non-managerial position by Mahard Egg Farm, Inc., or Mahard Pullet Farm, Inc., at Mahard's Chillicothe, TX, facility at any time from January 14, 2015, to the present.*

(Schladt Decl., Ex. 1 ¶ 32.)  For the consideration discussed below, the Settlement Class Members who do not opt out will release all claims arising out of or relating directly or indirectly to the facts alleged or which could have been alleged in the FAC.  (*Id.* ¶ 51.)

## III.    The Settlement Agreement.

### A.  Overview of Terms.

In consideration for the release of the Settlement Class Members' claims, Defendants have agreed to provide significant monetary relief. Defendants will pay $495,000 to the Settlement Class as part of a common settlement fund that covers both the class claims and Named Plaintiff Miranda's individual claims. (*Id.* ¶ 25.) In no circumstance will any portion of this fund revert to

the Defendants after final approval from the Court. After any Court-approved deductions for attorneys' fees, expenses, and Class Representative and Declarant service awards, the entire remaining fund will be distributed *pro rata* to all Settlement Class Members who timely return properly completed Claim Forms. (*Id.* ¶ 37.) The Parties agree that claims forms make sense in this case given the relatively transient nature of Settlement Class Members, the widespread use of aliases by Settlement Class Members, and the inaccuracies that exist related to length of employment in Defendants' records. Given all of this, Class Counsel anticipate that the average recovery for Settlement Class Members who timely return properly completed Claim Forms will be approximately $1,700. (Schladt Decl. ¶ 3.)

Should any funds remain after the close of the check negotiation period, the Parties' Agreement contemplates a redistribution of the remaining funds to those Settlement Class Members who negotiated their original settlement checks. The redistribution will be in proportion to the original distribution. (Schladt Decl., Ex. 1 ¶ 41.) The redistribution will be implemented if each check in the redistribution would be for at least $10. (*Id.*) Otherwise, the funds will be donated to the Parties' designated *Cy Pres* Recipient, the National Center for Farmworker Health, Inc. (*Id.*) The National Center for Farmworker Health, Inc., is an organization that provides information services, training and technical assistance, and a variety of products to community and migrant health centers nationwide. (*Id.* ¶ 19.)

After soliciting bids from a number of administrators and based on Class Counsel's experience, the Parties have agreed upon Atticus Administration, LLC, an independent third party, to serve as the Settlement Administrator. (*Id.* ¶ 31.) The Settlement Administrator will handle mailing notice, claims processing, mailing settlement payments, and other administrative tasks.

**B.  Form of Notice.**

The Parties have agreed to the forms of notice attached to the Settlement Agreement as Exhibits A and C. This notice program meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).

Pursuant to the Agreement, all Settlement Class Members will be sent a Postcard Notice and Claim Form. Both the Postcard Notice and Claim Form will be provided in English and Spanish. Both inform Settlement Class Members of basic information about the Settlement, and include a claim form which can be detached, completed, and returned. Further, the Postcard Notice will inform Settlement Class Members how to obtain additional information about the Settlement, including the URL for the Settlement Website where the Long Form Notice will be posted and a toll-free telephone number to contact Class Counsel. (*Id.* ¶¶  45-46.)

The Postcard Notice and Claim Form will be mailed via first class U.S. mail, to each Settlement Class Member's last known address as updated by the U.S. Postal Service's National Change of Address System and any other appropriate proprietary software the Settlement Administrator utilizes. (*Id.* ¶ 44.) Should any notice be returned as undeliverable or returned with a forwarding address, the Administrator shall promptly re-mail to the forwarding address, or if none, will utilize its databases to find a new address and re-mail, if possible. (*Id.*)

The Claim Forms Settlement Class Members will be required to return will require the Settlement Class Member to certify he or she is properly included in the Settlement Class by simply signing and dating the Form. (Schladt Decl., Ex. 1 at Ex. A.) The Form, as noted above, will be attached to the Postcard Notice and can simply be detached and put back in the mail to the Administrator, as it will be return-addressed with postage pre-paid. (*Id.*) Settlement Class Members will also be able to complete and submit a Claim Form via email, fax, text message, or WhatsApp message. (Schladt Decl., Ex. 1 ¶ 47.)

The Settlement Website will (1) contain the Long Form Notice (Schladt Decl., Ex. 1 at Ex. C) and copies of pleadings filed with the Court in this matter (the FAC, the Settlement Agreement, and copies of any orders issued by the Court in connection with the Settlement), (2) inform Settlement Class Members of the ability to update their contact information, (3) direct individuals to call Class Counsel as necessary, and (4) be updated as appropriate throughout the settlement process. (*Id.* ¶ 45.)

These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P 23(c)(2)(B).

### C.  Opt-Outs and Objections.

The Postcard Notice will also inform all Settlement Class Members of their right to opt out of or object to the Settlement, as well as the associated deadlines. (Schladt Decl., Ex. 1 at Ex. A.) Settlement Class Members who choose to opt out must send a written notice to the Settlement Administrator stating the individual's name and address and desire to opt out of the Settlement. (Schladt Decl., Ex. 1 ¶ 48.) To object, a Settlement Class Member must file a statement of objection with the Clerk of Court and mail a copy to the Settlement Administrator. (*Id.* ¶ 49.) The statement must state the case name and number; list the class member's name, address, phone, and email information; state the basis and explanation of the objection; be signed by the Settlement Class Member and, if represented by counsel, then by counsel; and state whether the Settlement Class Member intends to appear at the final approval hearing, with or without counsel.  (*Id.*)  The Postcard Notice will also direct Settlement Class Members to the website, where the Long Form Notice—containing further details on opting out and objecting—will be posted. (*Id.*)

### D.  Attorneys' Fees, Costs, and Named Plaintiff and Declarant Service Awards.

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys'

fees in an amount not to exceed one-third of the settlement fund, as well as documented, customary costs incurred by Class Counsel. (*Id.* ¶ 39.) Class Counsel may also petition the Court for $10,000 in service payments for each Named Plaintiff and Declarants Noel Gonzalez and Victor Corpus Casillas; and $2,500 in service payments for Declarants Efrain Alarcon, Roxana Alarcon Chavez, Fabricio Reyna Ferrer, Edgar Reyna, Claudia Madrigales, Sabino Ruiz, and Mark Gonzales. (*Id.* ¶ 38.) Any approved awards will be deducted from the settlement fund prior to distribution to the Settlement Class Members. (*Id.* ¶¶ 38, 58.) Class Counsel will formally petition the Court for these amounts fourteen (14) days prior to the Opt-Out Deadline and will post a copy of the motion papers on the Settlement Website so that Settlement Class Members are able to review them prior to the deadline to opt out or object to the Settlement. (*Id.* ¶ 55.) Neither final approval, nor the size of the settlement fund, are contingent upon the full amount of any requested fees or service awards being approved.

## ARGUMENT

The Parties have reached a proposed Settlement in this case prior to the class certification stage of litigation. Thus, the Court must conditionally certify the plaintiff class for purposes of settlement prior to approving the Settlement. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426–27 (E.D. Tex. 2002) ("Approval of a settlement in a class action necessarily requires the Court to determine if the proposed class is a proper class for settlement purposes.").

Following conditional certification, "[t]here are three steps that must precede a class action settlement. First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil*

*Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (*citing Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983)).

For the reasons set forth below, the Court should: (1) certify the Settlement Class for settlement purposes only, (2) preliminarily approve the Parties' proposed Settlement, (3) approve the class notices for distribution, (4) appoint Named Plaintiffs as Class Representatives and Named Plaintiffs' counsel as Class Counsel, and (5) set a date for the final approval hearing.

## I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

The Parties request that the Court certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only. Even a class certified for settlement purposes must satisfy the requirements for class certification pursuant to Rule 23, though the court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The proposed Settlement Class here meets the prerequisites for certification under Rule 23(a) and (b)(3), and classes are routinely certified for settlement purposes for claims of this sort. *See San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 442 (W.D. Tex. 1999) (granting class certification for settlement purposes in case alleging that employer discriminated and retaliated against Hispanic employees); *Reed*, 703 F.2d at 171; *Parker*, 667 F.2d at 1207.

### A.  The Prerequisites of Rule 23(a) Are Met.

Under Rule 23(a), a class may be certified only when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The proposed Settlement Class meets these requirements.

### 1. The Proposed Settlement Class Meets the Numerosity Requirement.

Fed. R. Civ. P. 23(a)(1) requires a proposed class be "so numerous that joinder of all members is impracticable." The Rule does not set a specific threshold, but rather allows courts to examine a number of factors, including "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). In *Boykin v. Georgia–Pacific Corp.*, the Fifth Circuit found that the numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members. 706 F.2d 1384, 1386 (5th Cir.1983). Here, the number of Settlement Class Members is 557, easily satisfying numerosity.

### 2. The Settlement Class Shares Common Questions of Law and Fact.

A proposed class satisfies the commonality requirement when "at least one issue's resolution will affect all or a significant number of class members." *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982). Plaintiffs do not have to show that there are multiple legal or factual issues common to the class; rather, the existence of one common issue is sufficient. *Yates v. Collier*, 868 F.3d 354, 365 n.6 (5th Cir. 2017). Because the core question in this case is whether Defendants created and maintained a hostile work environment on the basis of the Plaintiffs' race and/or national origin, commonality has been established. *See, e.g., Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201 (N.D. Ill. 2014)(concluding that plaintiffs established a significant common question among class members, namely whether African American employees were subject to conditions constituting a hostile work environment).

### 3. The Named Plaintiffs' Claims Are Typical.

A claim is typical if "the claims of the named plaintiffs are in fact those asserted as the

common class claims." *Dockery v. Fischer*, 253 F. Supp. 3d 832, 850 (S.D. Miss. 2015). Courts in the Fifth Circuit have noted that "once commonality is shown typicality will [often] follow as a matter of course." *Id.*

In this case, the Named Plaintiffs' claims are representative of the claims of every other member of the Settlement Class, and are based on the same legal theory. When every member of the Settlement Class, including the Named Plaintiffs, suffered the same discrimination on the basis of race and/or national origin, it is manifestly clear that the Named Plaintiffs' claims are typical. Claims of this sort are routinely found to be typical. *See Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir. 1993) ("Allegations of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operate to discriminate, satisfy the commonality and typicality requirements of Rule 23(a).").

    4.   The Class Representatives' Interests Are Aligned with Those of the Settlement Class, and the Class Representatives Will Vigorously Represent the Class through Qualified Counsel.

Courts in the Fifth Circuit consider two criteria for determining adequacy of a class representative: "(1) zeal and competence of representative's counsel; and (2) willingness and ability of representative to take active role in and control litigation and to protect interests of absentees." *J.D. v. Nagin,* 255 F.R.D. 406, 415 (E.D. La. 2009) (*citing Berger v. Compaq Computer Corp.,* 257 F.3d 475 (5th Cir. 2001)). Both requirements are met in this case.

The Named Plaintiffs have been actively engaged in this case. All of them have stayed abreast of developments in the case and settlement negotiations, and evaluated the Settlement Agreement. (Schladt Decl. ¶ 6.)  They all understand what it means to be a class representative and have put the interests of the Settlement Class first in making all decisions related to the case.

(*Id.*) Further, none of the Named Plaintiffs have any conflicts of interest that would compromise their representation of the Settlement Class. (*Id.*)

Lead counsel from Nichols Kaster, PLLP, ("Nichols Kaster") is highly experienced in complex class action litigation. (*See* Schladt Decl., Ex. 2 (Nichols Kaster, PLLP, Firm Resume).) Over the course of its forty-five-year history, Nichols Kaster has developed a sterling reputation in the legal community for representing employees, including in 42 U.S.C. § 1981 and Title VII cases. (*Id.*) The firm has been lead or co-counsel on hundreds of class and collective actions and frequently achieves class certification in both litigation and settlement contexts. (*Id.*) At present, the firm has more than thirty attorneys dedicated to protecting and advancing plaintiffs' rights, six of whom work almost exclusively on class-wide civil rights litigation. (*Id.*)

The Equal Justice Center (EJC) and the Transnational Worker Rights Clinic are also highly experienced and specialized in employment law. (*See* Johnson Decl. ¶ 3.) The EJC is a nonprofit law firm with offices in Austin, Dallas, Houston, and San Antonio, Texas, that represents low-income workers in individual, class, and collective actions involving employment discrimination, sexual harassment, wage-hour violations, and other employment claims. (*Id.*) The EJC operates the Transnational Worker Rights Clinic in partnership with the University of Texas School of Law, through which law students work on litigation, including this action, under the supervision of EJC attorneys. (*Id.*)

In sum, the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1) – (4) are met here.

### B.  The Prerequisites of Rule 23(b) Are Met

The Settlement Class also meets the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). In evaluating this prong, the court may consider class members' interests in

prosecuting their claims individually, the extent and nature of litigation thus far, and the desirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)-(C). In the context of a class-wide settlement, the court need not consider whether the case, if tried, would present difficult management problems. *Amchem*, 521 U.S. at 620. Those requirements are met here.

### 1. Common Questions of Law or Fact Predominate.

When considering predominance, the core issue is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Put differently, the focus of the predominance inquiry is whether class-wide questions "constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). The Fifth Circuit has affirmed findings of predominance when "class jury findings on the class questions will . . . significantly advance the resolution of the underlying hundreds of cases." *Id.* at 472-3.

In this case, there are several class-wide issues that predominate over any individual concerns. First, and most important, is the question of whether Defendants created and maintained a hostile work environment on the basis of race and/or national origin. Because each Settlement Class Member worked at the same facility, endured the same conditions, and were supervised by the same small group of managers, the answer to this question can be determined on a class-wide basis. Second, the common question of whether Defendants' policies, procedures, and practices constitute race- and/or national origin-based discrimination helps satisfy the predominance requirement. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV 09-4115, 2020 WL 128589, at *15 (E.D. La. Jan. 10, 2020) ("[The predominance] requirement is satisfied because

the common questions of liability substantially outweigh any questions pertinent to individual Class Members alone.").

2.   A Class Action is the Superior Vehicle for Adjudication.

To be certified, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Again, in the settlement context, the court need not address manageability. *Amchem*, 521 U.S. at 620.In a matter such as this, where the claims of all class members are based on the same common core of facts, but involve a modest amount of damages, it is clear that adjudicating this matter as a class action will achieve economies of time, effort, and expense, and promote uniformity of results. Further, it is unlikely that people would come forward on their own in this case outside of the class action context. *See Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000) (noting that courts may consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually" when determining whether a class action is superior to other methods of adjudication).

## II.   THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE.

There is a strong federal policy favoring settlement of class actions. *See Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981); *see also Smith v. Crystian,* 91 F. App'x 952, 955 (5th Cir. 2004). A settlement should thus be preliminarily approved as long as the Court does not "detect any *obvious* defects that will preclude final approval of the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 427 (E.D. Tex. 2002). "Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 930–31 (E.D. La.

2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

In determining whether a proposed settlement agreement is "fair, reasonable, and adequate" so as to warrant final approval under Fed. R. Civ. P. 23(e)(2), a court may consider several factors. Under the 2018 amendments to Rule 23(e)(2), courts consider whether:

A)    the class representatives and class counsel have adequately represented the class;

B)    the proposal was negotiated at arm's length;

C)    the relief provided for the class is adequate, taking into account:

      i)     the costs, risks, and delay of trial and appeal;
      ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
      iv)    any agreement required to be identified under Rule 23(e)(3); and

D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to the 2018 amendments, however, courts in the Fifth Circuit considered common law factors to determine fairness, reasonableness, and adequacy: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983). *See also Parker v. Anderson,* 667 F.2d 1204 (5th Cir. 1982). Today, "[b]ecause the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019).

For purposes of preliminary approval, "the standards are not as stringent as those applied to a motion for final approval…. If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314–15 (E.D. La. 2015).

Under these factors, the Parties' Settlement should be preliminarily approved.

### A.     The Class Representatives and Class Counsel Have Adequately Represented the Class and Support the Proposal.

The Parties here are represented by counsel who have significant experience in class action litigation and settlements, and in 42 U.S.C. § 1981 and Title VII cases in particular. (*See* Part II.A.4, *infra* (discussing Class Counsel's experience).) The Class Representatives and Class Counsel have zealously represented the class throughout this case and plan to continue doing so through the conclusion of the settlement process. (*See id.* (discussing the Named Plaintiffs' involvement in the litigation).) Additionally, the judgment of the Named Plaintiffs and Class Counsel is entitled to deference. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 300 (5th Cir. 2017) ("The quality and experience of the lawyering is thus something of a proxy for both 'trustworthiness' and 'reasonableness'—that is, if experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation.") (internal quotation marks and citations omitted). *See also In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* No. CV 09-4115, 2020 WL 128589, at \*19 (E.D. La. Jan. 10, 2020) ("Class Counsel are intimately familiar with the case and the Settlement, and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."). By signing the Settlement

Agreement and submitting this motion for preliminary approval, the Named Plaintiffs and Class Counsel have indicated their support of the proposed Settlement.

**B.      The Proposal Was Negotiated at Arm's Length Without Fraud or Collusion.**

As laid out *supra*, the Parties engaged in informal and formal discovery, briefed two motions to compel and Defendants' motion to dismiss, attended mediation with a third-party neutral, and negotiated at arms-length before this Settlement was reached. These circumstances entitle the Settlement in this case to the presumption of fairness. *See Murillo v. Texas A & M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) ("There is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class."). Additionally, attorneys' fees and service payments for the Class Representatives and Declarants were not discussed or negotiated until all other material settlement terms had been agreed upon, eliminating the possibility of a trade-off between compensation for the Settlement Class and compensation for Class Counsel or the Named Plaintiffs and Declarants. (Schladt Decl. ¶ 3.)

**C.      The Relief Provided for the Class is Adequate Considering the Case's Complexity, the Stage of Proceedings, the Probability of Success on the Merits, and the Range of Possible Recovery.**

While the exact amount each Settlement Class Member will recover in this case is unknown until the Parties know the number of Claim Forms filed, the gross settlement amount of $495,000 is substantial, and those filing claims are likely to recover a considerable portion of what they could have recovered in litigation. A recovery of a substantial percentage of the likely award if this case had proceeded all the way through final judgment is a significant result. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Here, given the expected claims rate of approximately 20% and the fact that the damages sought in this case are emotional distress damages and not a tangible out-of-pocket loss, such as wages, the net recovery per person is well within the range of reasonableness: it is expected to be approximately $1,680.37 on average.[2]

The requirement that Settlement Class Members return Claim Forms is appropriate and, in this case, necessary. The claims process in this case was designed to be as claimant-friendly as possible, is not onerous, and presents no meaningful bar to the making of a claim. While Defendants are in possession of contact information for all Settlement Class Members, Defendants are employers of transient workers who predominantly speak Spanish, and Defendants had only minimal contact with many of the Settlement Class Members. The class period begins more than five years ago. In this circumstance, the use of a claim form makes sense because it helps to ensure that Settlement Class Members who are sent checks will actually receive and cash them. Claim forms are commonly used to distribute settlement proceeds in class actions, and are routinely approved. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006). The use of claim forms here ensures that administration of the Settlement will be cost-effective and that recovery for participating Settlement Class Members will be substantial.

Taken all together, the gross recovery, the per class member recovery, and the method of distributing the settlement proceeds are all fair and reasonable and warrant preliminary settlement approval. The impressive nature of this recovery comes into even sharper focus when the risks of further litigation are considered. The Named Plaintiffs had yet to survive class certification or

---

[2] These numbers assume the Court grants Class Counsel's fees, costs, administrative costs, and service awards request at final approval and following the filing of the forthcoming fee petition. (Schladt Decl. ¶ 3.)

17

summary judgment. While the Named Plaintiffs are confident that these obstacles could have been overcome, each of these phases of litigation presents serious risks, which the Settlement allows the Named Plaintiffs to avoid. *See e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1066 (S.D. Tex. 2012) ("this settlement allows them to recover without the risks or delays of continued litigation").

In addition to the generalized uncertainty surrounding all litigation, Named Plaintiffs also faced the specific risk in this case of Defendant's defenses. The Named Plaintiffs believe that Defendant's arguments could be overcome, but they do present serious obstacles to recovery, which weighs in favor of settlement approval.

### D.  The Proposal Treats Class Members Equitably Relative to Each Other.

The Settlement allows each class member to receive a *pro rata* amount of compensation based on their length of employment at Mahard, thus treating class members equitably relative to each other.[3] *See Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331,

---

[3] The proposed Settlement includes service awards for Class Representatives and Declarants, as well as a separate Individual Settlement Amount for Plaintiff Miranda. The service payments in this case are justified given the Named Plaintiffs' and Declarants' involvement in the litigation. The proposed Settlement includes a $10,000 service award for each Named Plaintiff and Declarants Noel Gonzalez and Victor Corpus Casillas, and a $2,500 service award for the remaining seven Declarants. In addition to the three Named Plaintiffs, Declarants Gonzalez and Corpus Casillas made essential contributions and sacrifices to the development of this case. (Johnson Decl. ¶ 4.) Both Gonzalez and Corpus Casillas were among the first class members who sought legal help, met with attorneys from the Equal Justice Center, and were subsequently fired in retaliation for doing so. (*Id.*) Both Gonzalez and Corpus Casillas provided key information to plaintiffs' counsel and to the EEOC in multiple interviews; both were identified in a Third-Party Charge filed with the EEOC; and both were willing to serve as named plaintiffs. (*Id.*) Service awards are routinely awarded by courts in class action cases. *See, e.g., Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016) (approving a $10,000 service award for the named plaintiff in a class action). Plaintiff Miranda's Individual Settlement Amount is justified given her individual claims of sex discrimination and retaliation under Title VII, as well as her general release of all claims against Mahard.

at *13 (M.D. La. Feb. 4, 2019).

### III.   THE COURT SHOULD APPROVE THE DISSEMINATION OF THE CLASS NOTICES.

Attached to the Settlement Agreement, the Parties have submitted their proposed notices, including Postcard Notice to be sent to all Settlement Class Members by first class mail and Long Form Notice to be posted on the Settlement Website. (Schladt Decl., Ex. 1 at Exs. A, C.) These proposed notices include all of the information required by Fed. R. Civ. P. 23(c)(2)(B).   The Postcard Notice informs Settlement Class Members of the terms of the Settlement and their rights and deadlines in which to exercise them, and include a detachable, postage pre-paid Claim Form. The Long Form Notice, which will be posted on the Settlement Website, and to which the Postcard Notice provide a link, contains details about the definition of the Settlement Class, the proposed Class Counsel, the size of the settlement fund, the methodology for submitting a Claim Form, opting out, objecting, the potential size of Class Counsel's request for attorneys' fees, costs, Class Representative and Declarant service payments, and the date and location of the final approval hearing. Further, the Long Form Notice is modeled after the Federal Judicial Center's class action model notice. *See* www.fjc.gov. The notices certainly are "reasonably calculated, under all the circumstances,   to apprise interested parties of   the pendency of   the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see* Fed. R. Civ. P. 23(e)(1).

## <u>CONCLUSION</u>

Based on the foregoing, the Court should grant the Named Plaintiffs' Motion and enter the preliminary approval order.

Respectfully submitted:

Dated: March 2, 2020

**NICHOLS KASTER, PLLP**

*/s/ Nicole J. Schladt*
Nicole J. Schladt* MN Bar No. 0400234
nschladt@nka.com
Anna P. Prakash* MN Bar No. 0351362
aprakash@nka.com
Robert L. Schug* MN Bar No. 387013
schug@nka.com
80 S. 8th Street, 4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone (612) 256-3200
Fax (612) 338-4878
*Admitted *pro hac vice*

**EQUAL JUSTICE CENTER and
TRANSNATIONAL WORKER RIGHTS
CLINIC**

Aaron Johnson State Bar No. 24056961
ajohnson@equaljusticecenter.org
Rebecca Eisenbrey State Bar No. 24097646
reisenbrey@equaljusticecenter.org
510 S. Congress Ave., Ste. 206
Austin, Texas 78704
Telephone: (512) 474-0007
Fax: (512) 474-0008

Shana Khader State Bar No. 24099860
skhader@equaljusticecenter.org
1250 W. Mockingbird Ln., Ste. 455
Dallas, Texas 75247
Telephone: (469) 228-4223
Fax: (469) 941-0861

**COUNSEL FOR PLAINTIFFS**

20

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of March 2020, a true and accurate copy of the foregoing was filed electronically with the United States District Court for the Eastern District of Texas. Notice of this filing will be delivered to all parties by operation of the Court's electronic filing system.

*s/ Nicole Schladt*

Nicole Schladt

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiffs have complied with the meet and confer requirement in Local Rule CV-7(h). The motion is unopposed.

*s/ Nicole Schladt*

Nicole Schladt